STATE OF NEW YORK
SUPREME COURT     COUNTY OF ONONDAGA

**KEVIN DIDIO,**

                  Plaintiff,

vs.

**WESTROCK SERVICES, LLC,**

                  Defendant.

**COMPLAINT**

Index No. 014044/2023

The Plaintiff, **KEVIN DIDIO**, by his attorneys, Smith, Sovik, Kendrick & Sugnet, P.C., for his Complaint against Defendant, **WESTROCK SERVICES, LLC**, states and alleges as follows:

## THE PARTIES

1. Plaintiff, KEVIN DIDIO, is an individual who at all relevant times resided and continues to reside in the County of Onondaga and State of New York.

2. At all relevant times, Defendant, WESTROCK SERVICES, LLC, was and is a New York limited liability company duly organized and existing under the laws of the State of New York, and authorized to transact business in the State of New York, and/or a foreign corporation with offices in New York State that is authorized to transact business in the State of New York, with its principal place of business located at 100 Southern Drive, Camillus, New York, 13031.

3. Defendant sells corrugated packaging to various industries and has approximately 300 production facilities worldwide.

{S2016816.1}

1

## JURISDICTION AND VENUE

4. Venue in the County of Onondaga, State of New York, is proper because it is the County in which Plaintiff resides and, further, the County of Onondaga is the County in which a substantial part of the events or omissions giving rise to the claim occurred.

5. This Court has jurisdiction over this matter and the parties herein because Plaintiff resides in the County of Onondaga, State of New York, and a substantial part of the events or omissions giving rise to the claim occurred in the County of Onondaga, State of New York.

## FACTUAL BACKGROUND

6. From 2001 to 2023, Plaintiff worked for Defendant and Defendant's predecessors-in-interest, Southern Container and thereafter Rock-Tenn Co.

7. At all relevant times, Plaintiff and Defendant held an employer-employee relationship under which Plaintiff qualified as a commission salesperson under New York Labor Law.

8. Alternatively, at all relevant times, Plaintiff was an independent contractor and sales representative of Defendant under New York Labor Law.

9. At all relevant times, as either a commission salesperson or independent contractor/sales representative, Plaintiff, and Defendant were parties to a valid and enforceable contract under which Defendant was required to timely and periodically pay Plaintiff wages, commissions, bonuses, renumeration, and other monies for the work and services provided by Plaintiff to Defendant.

10. In or around 2016, Defendant instituted a New Compensation Program ("Compensation Program") under which Defendant, as part of its employer-employee and/or independent contractor relationship with Plaintiff, was contractually required, and promised to pay Plaintiff one percent (1%) commission on all net sales made by Plaintiff, as well as an additional percentage on "Adders" as defined by Defendant's Compensation Program, and other compensation.

11. Plaintiff relied upon Defendant's promise under the Compensation Program and was induced by the Compensation Program into continuing his employment and/or independent contractor relationship with Defendant in lieu of seeking other employment and/or otherwise ending his professional relationship with Defendant.

12. Throughout his employment and/or independent contractor relationship with Defendant, Plaintiff generated, serviced, and earned commission on various West Rock customer accounts, such commission having been earned and/or vested, based upon sales for, among others, "First Quality Products"; "First Quality Tissue"; "First Quality Retail"; "First Quality Baby"; "First Quality Hygenics"; and, "Nutek Disposables" (collectively "accounts").

13. In fiscal year 2017, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

14. In fiscal year 2018, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant..

15. In fiscal year 2019, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

16. In fiscal year 2020, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

17. In fiscal year 2021, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

18. In fiscal year 2022, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

19. In fiscal year 2023, Defendant did not pay Plaintiff the 1% commission on his sales for the accounts to which he was entitled under the Compensation

{S2016816.1}

Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

20. In fiscal year 2017, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

21. In fiscal year 2018, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

22. In fiscal year 2019, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

23. In fiscal year 2020, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

24. In fiscal year 2021, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

25. In fiscal year 2022, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

26. In fiscal year 2023, Defendant did not pay Plaintiff the additional percentage on "Adders" to which he was entitled under the Compensation Program, and in accordance with the contractual terms of his employment and/or independent contractor relationship with Defendant.

27. In fiscal years 2017, 2018, 2019, 2020, 2021, 2022, and 2023, Defendant otherwise did not pay Plaintiff the compensation and other monies he was entitled to in accordance with the terms of the parties' contract and his employment and/or independent contractor relationship with Defendant.

### AS AND FOR A FIRST CAUSE OF ACTION
**(Breach of Contract)**

28. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "27" above as if fully set forth herein.

29. Plaintiff, as either a commission salesperson or independent contractor/sales representative, and Defendant, were parties to a valid and enforceable contract under which Defenant was required to timely and periodically pay Plaintiff wages, commissions, bonuses, renumeration, and other monies for the work and services provided by Plaintiff to Defendant, including one percent (1%) commission on all sales made by Plaintiff, as well as an additional percentage on

"Adders" and other compensation, for fiscal years 2017, 2018, 2019, 2020, 2021, 2022, 2023, and any prospective compensation owed to Plaintiff.

30. Despite these obligations, Defendant unlawfully failed to provide the foregoing required compensation, including, but not limited to, failing to provide commissions, wages and other compensation based upon sales to First Quality Products, First Quality Tissue, First Quality Retail, First Quality Baby, First Quality Hygenics, Nutek Disposables, and First Quality Tissue, as well as other customers/accounts the identities of which may be revealed during discovery in this matter.

31. Defendant's failure to pay Plaintiff the foregoing compensation to which he was and remains entitled constitutes a breach of contract.

32. By reason of the foregoing, Plaintiff is entitled to outstanding wages (including but not limited to commissions) in an amount of at least one percent of all sales Plaintiff made on behalf of Defendant pursuant to contract, the terms of his employment and/or independent contractor relationship with Defendant, and Defendant's compensation plan(s) then in force, benefits, bonuses, and other renumeration, and additional sums of statutory damages, liquidated damages, costs, fees, disbursements, attorneys' fees, statutory penalties, statutory remedies, pre-judgment interest, post-judgment interest, and such other and further relief the Court deems just and proper, to be determined by the Court and/or the jury as appropriate together with costs and disbursements to the fullest extent permitted by law.

## AS AND FOR A SECOND CAUSE OF ACTION
**(Promissory Estoppel)**

33. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "32" above as if fully set forth herein.

34. In or around 2016, Defendant instituted a Compensation Program under which Defendant, as part of its employer-employee and/or independent contractor relationship with Plaintiff, was contractually required to, and clearly and unambiguously promised to, pay Plaintiff one percent (1%) commission on all net sales made by Plaintiff, as well as an additional percentage on Adders.

35. Plaintiff reasonably relied upon Defendant's promise under the Compensation Program and was induced by the Compensation Program into continuing his employment and/or independent contractor relationship with Defendant.

36. It was foreseeable to Defendant that Plaintiff would reasonably rely upon, and be induced by Defendant's promise under the Compensation Program into continuing his employment and/or independent contractor relationship with Defendant.

37. Despite Defendant's promise, Defendant unlawfully failed to provide the foregoing required compensation, including, but not limited to, failing to provide commissions, wages and other compensation based upon sales to First Quality Products, First Quality Tissue, First Quality Retail, First Quality Baby, First Quality Hygenics, Nutek Disposables, and First Quality Tissue, as well as other

{S2016816.1}                                           8

customers/accounts the identities of which may be revealed during discovery in this matter.

38. Defendant's failure to pay Plaintiff the foregoing compensation to which he was and remains entitled constitutes a cause of action for promissory estoppel.

39. By reason of the foregoing, Plaintiff is entitled to outstanding wages (including but not limited to commissions) in an amount of at least one percent of all sales Plaintiff made on behalf of Defendant pursuant to contract, the terms of his employment and/or independent contractor relationship with Defendant, and Defendant's compensation plan(s) then in force, benefits, bonuses, and other renumeration, and additional sums of statutory damages, liquidated damages, costs, fees, disbursements, attorneys' fees, statutory penalties, statutory remedies, pre-judgment interest, post-judgment interest, and such other and further relief the Court deems just and proper, to be determined by the Court and/or the jury as appropriate together with costs and disbursements to the fullest extent permitted by law.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Violation of Labor Law § 191(1)(c))**

40. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "39" above as if fully set forth herein.

41. Under New York Labor Law § 191(1)(c), Defendant was required to reduce its agreed-upon terms of employment with Plaintiff to a writing, signed by both Defendant and Plaintiff, and keep such writing on file for a period of not less than three years to be made available to Plaintiff upon request. Defendant was

further required to include in the writing a description of how wages, salary, drawing account, commissions and all other monies earned and payable were to be calculated, and details pertinent to the payment of wages, salary, drawing account, commissions and all other monies earned and payable in the case of termination of employment by either party.

42. Plaintiff has informed Defendant that he is entitled to the foregoing unpaid commissions, wages, and other compensation pursuant to the contractually agreed upon terms of his employment and/or independent contractor relationship with Defendant, and has further demanded Defendant produce a copy of any written contract with contrary terms.

43. Defendant has failed to produce a copy of any contract or other signed writing as required by New York Labor Law § 191(1)(c).

44. Defendant's failure to produce a copy of any contract or other signed writing as required by New York Labor Law § 191(1)(c) gives rise to a presumption that the terms presented by Plaintiff herein, under which Plaintiff was and remains entitled to the foregoing unpaid commissions, wages, and other compensation, are the agreed terms of his employment and/or independent contractor relationship with Defendant.

45. By reason of the foregoing, Plaintiff is entitled to outstanding wages (including but not limited to commissions) in an amount of at least one percent of all net sales Plaintiff made on behalf of Defendant pursuant to contract, the terms of his employment and/or independent contractor relationship with Defendant, and

Defendant's compensation plan(s) then in force, benefits, bonuses, and other renumeration, and additional sums of statutory damages, liquidated damages, costs, fees, disbursements, attorneys' fees, statutory penalties, statutory remedies, pre-judgment interest, post-judgment interest, and such other and further relief the Court deems just and proper, to be determined by the Court and/or the jury as appropriate together with costs and disbursements to the fullest extent permitted by law.

## AS AND FOR A FOURTH CAUSE OF ACTION
**(Violation of Labor Law § 191-c)**

46. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "45" above as if fully set forth herein.

47. To the extent Plaintiff was an independent contractor and sales representative of Defendant, under Labor Law § 191-c, upon termination of Plaintiff's contract with Defendant, Defendant was required to pay Plaintiff all earned commissions within five business days after such termination or otherwise within five business days after such commissions became due.

48. At the time of the termination of Plaintiff's contract with Defendant, all of the commissions and other compensation generated from the sales Plaintiff made in 2017, 2018, 2019, 2020, 2021, 2022, and 2023 were earned, vested, and otherwise due to Plaintiff.

49. Defendant unlawfully failed to provide the foregoing required compensation, including, but not limited to, failing to provide commissions, wages and other compensation based upon sales to First Quality Products, First Quality

Tissue, First Quality Retail, First Quality Baby, First Quality Hygenics, Nutek Disposables, and First Quality Tissue, as well as other customers/accounts the identities of which may be revealed during discovery in this matter.

50.     Defendant's failure to pay Plaintiff the foregoing compensation to which he was and remains entitled constitutes a violation of Labor Law § 191-c for which Defenant is liable to Plaintiff for "double damages" in addition to the underlying unpaid compensation and other damages set forth herein.

51.     By reason of the foregoing, Plaintiff is entitled to outstanding wages (including but not limited to commissions) in an amount of at least one percent of all net sales Plaintiff made on behalf of Defendant pursuant to contract, the terms of his employment and/or independent contractor relationship with Defendant, and Defendant's compensation plan(s) then in force, benefits, bonuses, and other renumeration, and additional sums of statutory damages, liquidated damages, costs, fees, disbursements, attorneys' fees, statutory penalties, statutory remedies, pre-judgment interest, post-judgment interest, and such other and further relief the Court deems just and proper, to be determined by the Court and/or the jury as appropriate together with costs and disbursements to the fullest extent permitted by law.

### AS AND FOR A FIFTH CAUSE OF ACTION
**(Damages Under Labor Law § 198)**

52.     Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "51" above as if fully set forth herein.

53. Defendant's breach of contract and violation of New York Labor Law for failing to provide the foregoing required compensation, including, but not limited to, failing to provide commissions, wages and other compensation as to First Quality Products, First Quality Tissue, First Quality Retail, First Quality Baby, First Quality Hygenics, Nutek Disposables, and First Quality Tissue, as well as other customers/accounts the identities of which may be revealed during discovery in this matter, entitles Plaintiff to all available damages and remedies afforded under Labor Law § 198, including costs, expenses, liquidated damages in the amount of no less than the full amount of all unpaid compensation, attorneys fees, pre and post judgment interest, full wages, wage supplements, benefits, and other compensation.

54. By reason of the foregoing, Plaintiff is entitled to outstanding wages (including but not limited to commissions) in an amount of at least one percent of all net sales Plaintiff made on behalf of Defendant pursuant to contract, the terms of his employment and/or independent contractor relationship with Defendant, and Defendant's compensation plan(s) then in force, benefits, bonuses, and other renumeration, and additional sums of statutory damages, liquidated damages, costs, fees, disbursements, attorneys' fees, statutory penalties, statutory remedies, pre-judgment interest, post-judgment interest, and such other and further relief the Court deems just and proper, to be determined by the Court and/or the jury as appropriate together with costs and disbursements to the fullest extent permitted by law.

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount which exceeds the jurisdictional limits of all lower courts to be determined by the trier of fact, such amount to include, but not be limited to, all outstanding/unpaid wages (including but not limited to commissions) owed to Plaintiff, benefits, bonuses, and other renumeration, and additional sums of statutory damages, liquidated damages, costs, fees, disbursements, attorneys' fees, statutory penalties, statutory remedies, pre-judgment interest, post-judgment interest, and such other and further relief the Court deems just and proper, to be determined by the Court and/or the jury as appropriate, together with costs and disbursements to the fullest extent permitted by law.

Dated: March 26, 2024              **SMITH, SOVIK, KENDRICK & SUGNET, P.C.**

By: _____
Steven Ward Williams, Esq.
Thomas J. DeBernardis, Esq.
250 South Clinton Street, Suite 600
Syracuse, New York 13202
Telephone:  (315) 474-2911
Facsimile:  (315) 474-6015
Email:      swilliams@smithsovik.com
            tdebernardis@smithsovik.com

TO:    **JACKSON LEWIS, P.C.**
       Jason A. Zoldessy, Esq.
       Attorneys for Defendant
       666 Third Avenue
       New York, New York 10017
       Telephone: (212) 545-4021
       Email: Jason.Zoldessy@jacksonlewis.com